**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

IN RE:
DEANE G. ANDERSON,                                  Chapter 7
                    DEBTOR.                          Case No. 99-13230-WCH

_____

DEANE G. ANDERSON,
                    PLAINTIFF,

                                                     Adversary Proceeding
v.                                                   No. 07-1328

DAGMAR RICHARDS,
                    DEFENDANT.

_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matters before the Court are the "Defendant/Plaintiff in Counterclaim's Motion for

Summary Judgment Dismissing Complaint to Determine Validity, Priority or Extent of a Lien and

Determination that Debtor is Not Entitle [sic] to a Discharge" (the "Motion for Summary Judgment")

filed by the Defendant Dagmar Richards ("Richards"), the former spouse of the debtor-plaintiff

Deane G. Anderson (the "Debtor"), the "Plaintiff/Defendant in Counterclaim's Response in

Opposition to the Motion for Summary Judgment" (the "Opposition") filed by the Debtor, and

Richards' "Motion to Strike Portions of the Affidavit of Dean [sic] Anderson and Certain Exhibits"

(the "Motion to Strike").  The Debtor filed the present adversary proceeding seeking to avoid a

mortgage he granted to Richards pursuant to a separation agreement (the "Agreement"), a declaration

that Richards' claim was discharged in the Debtor's bankruptcy case, and an award of damages for Richards' alleged breach of the Agreement or, alternatively, unjust enrichment.  Richards subsequently filed a counterclaim seeking, *inter alia*, declaratory judgments that the Debtor perpetrated a fraud upon her and the Court and that neither her claim against him nor her security interest were discharged in his bankruptcy case.  Richards now moves for summary judgment with respect to both the Debtor's Complaint and her counterclaim.  Additionally, she moves to strike portions of the Debtor's affidavit in opposition to the Motion for Summary Judgment on various grounds.  For the reasons set forth below, I will grant the Motion to Strike in part and deny it in part, grant the Motion for Summary Judgment in part, deny it in part, abstain in part, and dismiss a portion of the counterclaim for lack of jurisdiction.

## II. BACKGROUND

### A. Preliminary Matters

Pursuant to the Local Rule 56.1 of the United States District Court for the District of Massachusetts, adopted and made applicable to proceedings in the Bankruptcy Court by Massachusetts Local Bankruptcy Rule ("MLBR") 7056-1, motions for summary judgment must include "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions, and other documentation."[1]  Failure to include such a statement constitutes grounds for denial of the motion.[2]  Oppositions to summary judgment must similarly contain a statement of material facts to which the

---

[1] LR, D. Mass 56.1, adopted and made applicable to proceedings in the Bankruptcy Court by MLBR 7056-1.

[2] *Id.*

2

opposing party contends that there exists a genuine issue to be tried, with supporting references to the record.[3]  Material facts set forth in the moving party's statement are deemed admitted for purposes of summary judgment if not controverted by an opposing statement.[4]

In the present case, neither party included the statement of material facts as required by LR, D. Mass. 56.1.  At best, Richards' memorandum in support of the Motion for Summary Judgment contains a rambling narrative of the facts mixed with argument and legal conclusions.  The narrative references the exhibits to the motion, but not Richards' separately filed affidavit, upon which the narrative relies greatly.  The Debtor's pleadings fair no better.  The Opposition is unsupported by a memorandum of law and consists of little more than a superficial denial that Richards is entitled to summary judgment with no factual summary.  This too, however, is supported by an un-referenced affidavit of the Debtor and roughly the same exhibits that Richards submitted.  While cause exists to deny the Motion for Summary Judgment in the absence of the statement of material facts required by LR, D. Mass. 56.1, I find such a denial unnecessary and inefficient under the circumstances.  Prior to the hearing on the Motion for Summary Judgment, the parties filed a Joint Pre-Trial Statement pursuant to a pre-trial order entered on June 26, 2009, setting forth facts to which the parties agree and require no proof.[5]  Therefore, I may consider this statement of agreed facts admitted for purposes of summary judgment.  To the extent that the parties filed affidavits, I will use the statements of fact alleged therein to supplement the record before me.

---

[3] *Id.*

[4] *Id.*

[5] Joint Pre-Trial Statement ("JPTS"), Docket No. 54 at ¶ 2.  Unless otherwise indicated, all docket citations refer to the above-captioned adversary proceeding

I note, however, that the Joint Pre-Trial Statement also contains a list of twenty-three "Disputed Issues of Fact and Law."[6]  In opposing summary judgment, the Debtor relies on this list as conclusive evidence that material facts remain in dispute.  He is mistaken.  In contrast to the agreed facts, the form pre-trial order merely requires the parties identify issues of fact to which they could not agree and remain for trial.[7]  The pre-trial order does not provide that such a list constitutes a stipulation that those factual issues are actually subject to a bona fide dispute.  Accordingly, in order to demonstrate that a material issue of fact remains in dispute, the Debtor must rely on his exhibits and affidavit attached to the Opposition.

As a final preliminary matter, Richards moves to strike portions of the Debtor's affidavit, specifically, paragraphs seven through fifteen, and exhibit 4 to the Opposition on the basis that "the statements . . . are not made on personal knowledge of the affiant . . . [the affidavit] contains facts not admissible in evidence or are irrelevant, . . . hearsay, [or] inadmissible under the Parol evidence rule or . . . the doctrine of res judicata."[8]  Aside from two general statements regarding the parol evidence rule and Fed. R. Civ. P. 56(e), the Motion to Strike does not elaborate why these paragraphs should be struck.  In support of the Motion to Strike, Richards filed a second affidavit to correct alleged misrepresentations in the Debtor's affidavit.  Having reviewed both affidavits, it appears Richards disputes the facts alleged in the Debtor's affidavit for two reasons: (1) in paragraph eight, the Debtor states terms of the separation agreement different than those outlined in the exhibit both

---

[6] JPTS at ¶ 3 (unnumbered).

[7] Parties opposing summary judgment must do more than simply deny allegations. *See Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[8] Docket No. 61 at 1.

parties attached to their pleadings; and (2) in the remaining paragraphs, the Debtor states his subjective understanding and intent with respect to listing her claim and address in his schedules. Neither the Motion to Strike nor her affidavit provide any justification why exhibit 4 to the Opposition should be struck.

"Under Massachusetts law, parol evidence may not be admitted to contradict the clear terms of an agreement, or to create ambiguity where none otherwise exists."[9]  In paragraph eight of the Debtor's affidavit, he states terms of the Agreement contrary to what was reduced to writing, namely, that "[a]s part of the divorce [he] was required to grant my ex-wife a mortgage to be recorded *after* the liens were discharged by her."[10]  The Agreement provides unambiguously that "[s]imultaneous with [Richards'] transfer of title to marital home, [the Debtor] shall execute a promissory note and mortgage securing [Richards'] interest of $45,000 in the marital home."[11]  Unlike the Debtor's description in his affidavit, the Agreement contains no conditional language regarding when the mortgage was to be recorded.  Therefore, to the extent that paragraph eight of the Debtor's affidavit is demonstrably at odds with the unambiguous terms set forth in the Agreement, Richards' objection is well-taken.  As such, I will strike paragraph eight of the Debtor's affidavit.

The remainder of Richards' objections are considerably less meritorious.  Essentially, she disputes that the Debtor's did not know that the mortgage was recorded or her proper mailing address.  These, however, are factual disputes that may still require a trial before they are resolved. At this juncture, the Debtor is competent to attest to his own understanding and belief regarding

---

[9] *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1261 (1st Cir. 1991).

[10] Docket No. 58, Debtor's Affidavit at ¶ 8 (emphasis added).

[11] Docket No. 38, Ex. 1 at ¶ 6.

these events, and to the extent that Richards alleges fraud, they are certainly relevant. As such, I will

deny the remainder of the Motion to Strike.

      B. <u>Facts</u>

      Prior to 1996, the Debtor and Richards were married and lived together at 33 Diandy Road,

in Sagamore Beach, Massachusetts (the "Sagamore Property").[12]  The Debtor and Richards owned

the Property jointly.[13]  While living at the Property, their mailing address was P.O. Box 1457,

Sagamore Beach, Massachusetts 02562 (the "PO Box").[14]

      In 1996, the parties separated and filed for divorce in the Barnstable Division of the Probate

and Family Court Department of the Trial Court (the "Probate Court").[15]  Richards moved to 28

Broadmarsh Avenue, in Wareham, Massachusetts (the "Wareham Property"), which she owned

individually, while the Debtor continued to reside at the Sagamore Property.[16]  On May 28, 1998,

the parties executed the Agreement which provided in relevant part:

> It is hereby agreed by the parties that the following . . . agreement shall be . . . incorporated in the judgment of this court:
>
>                \* \* \*
>
> 2. Parties waive all claims to alimony, past, present, and future.
>
> 3. [Richards] owns property in Wareham, MA held solely in her name. . . . The property is encumbered by 2 mortgages and a tax lien. A suit on the 2nd mortgage has been filed and a lien of $60,000 placed on both the Wareham property and the

---

[12] JPTS at ¶ 2.3.

[13] *Id.*

[14] *Id.* at ¶ 2.4.

[15] *Id.* at ¶¶ 2.5, 8.

[16] *Id.* at ¶¶ 2.1, 6-7.

marital home located in Sagamore. [The Debtor] hereby waives all right and interest in the Wareham property and [Richards] agrees to be responsible for all debt and liability associated with the Wareham property, including but not limited to the $60,000.00 lien. . . .

4. [Richards] shall obtain a discharge of the lien ($60,000.) and note on the marital property and shall notify [the Debtor] of the recording of same.  Upon [Richards'] . . . discharge of all liens and encumbrances in the marital property (excepting 1st and 2nd mortgage to Sandwich Coop and any other encumbrances solely attributable to [the Debtor]), within 60 days thereof, [the Debtor] shall pay to [Richards], her heirs or assigns the sum of $45,000. . . . [Richards] shall convey forthwith her right, title and interest in the marital home to [the Debtor]. [The Debtor] shall . . . cause [Richards'] name to be removed from both existing mortgages to Sandwich Coop with [sic] 1 year of the . . . of [sic] recording of discharge or the $60,000 lien and discharge of promissory note underlying the lien or property shall be placed for sale.

5. . . . This agreement shall not merge into the Judgment but shall retain independent legal significance as a binding contract.

6.  *Simultaneous with [Richards'] transfer of title to marital home, [the Debtor] shall execute a promissory note and mortgage securing [Richards'] interest of $45,000 in the marital home.*  Said mortgage/note shall be w/o interest and payable upon the discharge of the $60,000 lien and note or 60 days thereafter.[17]

On the same date, the Probate Court entered the Judgment of Divorce Nisi (the "Judgment") expressly incorporating, but not merging, the Agreement into the Judgment.[18]

On July 31, 1998, the Probate Court entered a judgment divesting Richards of her interest in the Sagamore Property pursuant to Mass. R. Dom. Rel. P. 70 after it found that she willfully failed to convey her interest in the Sagamore Property to the Debtor as required by the Agreement as incorporated into the Judgment.[19]   Thereafter, the Debtor granted Richards a mortgage on the

---

[17] Docket No. 38, Ex. 1 at ¶¶ 2-6 (struck language omitted) (emphasis added).

[18] Docket No. 38, Ex. 2.

[19] Docket No. 58, Ex. 4.

Sagamore Property on August 20, 1998 (the "Mortgage").[20]  The Mortgage was subsequently

recorded on August 26, 1998.[21]  On the same date he granted Richards the Mortgage, the Debtor

recorded a Declaration of Homestead on the Sagamore Property.[22]  The Debtor, however, never paid

Richards the $45,000 obligation secured by the Mortgage referred to in paragraph four of the

Agreement.[23]

The Debtor filed a voluntary Chapter 7 petition on April 16, 1999.[24]  On Schedule F -

Creditors Holding Unsecured Non-Priority Claims ("Schedule F"), the Debtor listed Richards

holding a claim in the amount of $1.00.[25]  Richards' claim was neither marked as disputed nor

contingent in Schedule F.[26]  Under her name, however, the Debtor listed her address as "LKA: PO

Box 1457, Sagamore Beach, MA 02562."[27]  In his affidavit, the Debtor explained that he believed

that Richards was an unsecured creditor without an ascertainable claim because she never met a

condition for granting of the Mortgage, namely, the discharge of all non-consensual liens on the

---

[20] Docket No. 38, Ex. 3.

[21] *Id.*

[22] JPTS at ¶ 2.16; Docket No. 38, Ex. 4.

[23] JPTS at ¶ 2.10.

[24] *Id.* at ¶ 2.11.  The Debtors' case was commenced before the enactment of the
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No.
109-8, 119 Stat. 23. Therefore, unless otherwise noted, all references to the "Bankruptcy Code"
or to statutory sections herein are to the Bankruptcy Reform Act of 1978, as amended prior to
April 16, 1999, 11 U.S.C. §§ 101, *et seq.*

[25] Docket No. 42, Ex. 3.  *See also* Schedule F, Docket No. 1, Case No. 99-13230-WCH

[26] *Id.*

[27] *Id.*

Sagamore Property.[28]  The Debtor also asserted that he was unaware that the Mortgage had been

recorded.[29]  With respect to her address, the Debtor stated that he listed the PO Box because Richards

"always used [it] and so far as I was aware continued to use the former marital post office box for

the mailing address."[30]  He further stated that he "believed it to be the only appropriate address."[31]

In contrast, Richards argues that the Debtor was aware she was living at the Wareham Property

because that address was listed on the Mortgage and in the divorce papers.[32]

The Debtor also listed a $60,000 claim held by "Rhode Island Depositors Economi [sic]

Protection Corp., assignee of Central Credit Union" ("Depositors") on Schedule F.[33]  Although it is

not an admitted fact, the parties appear to agree that Depositors' claim is the $60,000 lien on the

Sagamore Property referenced in paragraph three and four of the Agreement.  The Debtor listed only

one other unsecured creditor on Schedule F, Capeway Electrical Supply, with a claim of $12,000.[34]

While both Richards' and Depositors' names appear on the Debtor's matrix of creditors (the

"Matrix"), neither has a corresponding mailing address.[35]

---

[28] Docket No. 58, Debtor's Affidavit at ¶ 12.  As stated above, the Agreement does not
contemplate any pre-conditions for the granting of the Mortgage.

[29] *Id.* at ¶ 11.

[30] *Id.* at ¶ 13.

[31] *Id.* at ¶ 14.

[32] Docket No. 41 at ¶ 18.

[33] Docket No. 42, Ex. 3.  *See also* Schedule F, Docket No. 1, Case No. 99-13230-WCH

[34] *Id.*

[35] Docket No. 42, Ex. 4.  *See also* Matrix of Creditors, Docket No. 1, Case No. 99-13230-
WCH.

On May 24, 1999, the Debtor filed a Motion to Avoid Judicial Lien seeking to avoid a judicial lien on the Sagamore Property in the amount of $60,000 held by Depositors pursuant to 11 U.S.C. § 522(f).[36]  A review of the certificate of service for the Motion to Avoid Judicial Lien reveals that the United States Trustee, the Chapter 7 trustee, and Depositors were the only parties served.[37] In the absence of an objection, I granted the Motion to Avoid Judicial Lien on July 7, 1999.[38]

On June 30, 1999, the Chapter 7 trustee entered a Trustee's Report of No Distribution.[39]  The Debtor subsequently received a discharge on July 14, 1999,[40] and the case was later closed on August 3, 1999.

At some point after the closure of his case, the Debtor commenced an action in the Probate Court seeking to discharge the Mortgage on the grounds that it was discharged in bankruptcy. Richards asserts that she never received notice of the Debtor's bankruptcy and first learned of it in the summer of 2003 as part of the Probate Court action.[41]  The Probate Court ultimately stayed that action in favor of the parties returning to this Court for a determination as to the effect of the Debtor's discharge on Richards' claim.

On October 26, 2006, the Debtor moved to reopen his case and, pursuant to 11 U.S.C. § 522(f), avoid a purported judicial lien on the Sagamore Property held by Richards in the amount of

---

[36] Docket No. 42, Ex. 5.  *See also* Motion to Avoid Judicial Lien, Docket No. 5, Case No. 99-13230-WCH.

[37] *Id.*

[38] *See* Docket No. 8, Case No. 99-13230-WCH.

[39] *See* Docket No. 7, Case No. 99-13230-WCH.

[40] *See* JPTS at ¶ 2.12; Docket No. 9, Case No. 99-13230-WCH.

[41] Docket No. 41 at ¶¶ 9, 11, 16.

$45,000. He contended that as of the petition date, Richards' lien, namely, the Mortgage, was junior to Depositors' lien, and is therefore entirely avoidable.[42] I reopened the case on November 11, 2006, and Richards opposed the avoidance of the Mortgage. After a hearing on the matter, I denied the Debtor's request to avoid the purported judicial lien without prejudice and the present adversary proceeding followed.

Through his three-count Complaint, filed August 9, 2007, the Debtor seeks to avoid the Mortgage and obtain a declaration that Richards' claim was discharged in his bankruptcy and an award damages for Richards' alleged breach of the Agreement or, alternatively, unjust enrichment, due to her failure to obtain a discharge of the Depositors' lien.[43] Richards filed an answer denying nearly every allegation of the Complaint and a single counterclaim (the "Counterclaim") seeking declarations that the Debtor perpetrated a fraud upon her and the Court and that neither her claim nor her security interest were discharged in bankruptcy. Richards also requests that I rescind the transfer of her interest in the Sagamore Property and award her interest on her claim in the amount of 12% per annum from August 3, 1999, as well as her reasonable attorney's fees in bringing this action. The Debtor subsequently filed an answer to the Counterclaim similarly denying the allegations therein.

I conducted a pre-trial status conference on August 15, 2008, and another on June 26, 2009, at which time I issued a pre-trial order which, *inter alia*, set forth the deadline for filing a joint pre-

---

[42] Recitation of the formula and values involved is unnecessary for the determination of this case. For the purposes of this Memorandum of Decision, I will assume, *arguendo*, that based upon the formula set forth in 11 U.S.C. § 522(f), Richards' lien impairs the Debtor's exemption in an amount greater than the value of the lien.

[43] The individual counts of the Complaint are titled Count I - Declaratory Relief, Count II - Lien Avoidance, and Count III - Breach of Contract/Unjust Enrichment.

11

trial statement and scheduled the matter for trial.  On September 12, 2009, Richards moved for

summary judgment with respect to both the Debtor's Complaint and the Counterclaim.  The parties

filed the Joint Pre-Trial Statement on October 5, 2009, and the Opposition and Motion to Strike

followed on October 15, 2009.  The following day I conducted a hearing on the Motion for Summary

Judgment and the Motion to Strike.  At the conclusion of oral arguments, I took both matters under

advisement.

## III. <u>POSITIONS OF THE PARTIES</u>

<u>Richards</u>

The thrust of Richards' argument is that the Debtor intentionally listed her claim and address

incorrectly in Schedule F.  By doing so, Richards contends that the Debtor deliberately concealed

his bankruptcy from Richards and thus perpetrated a fraud upon both her and the Court.  Due to her

lack of timely notice, she asserts that she may now bring her dischargeability action as a

counterclaim to the Debtor's declaratory action.  Without much explanation, Richards argues that

the Debtor is not entitled to a discharge pursuant to 11 U.S.C. §§ 727(2), (3), (4), (6) [sic][44] or a

discharge of her claim pursuant to 11 U.S.C. §§ 523(a)(2), (a)(3), (a)(4), (a)(6), and (a)(15).  With

respect to the Debtor's attempt to avoid her lien under 11 U.S.C. § 522(f), Richards notes that a

mortgage is not a judicial lien and is therefore unavoidable.  She, however, offers no support for her

request for rescission or awards of interest on her claim and attorney's fees.

---

[44] Although Richards omitted an alphabetical subsection from her citation, the reference
must be to 11 U.S.C. § 727(a) as that is the only subsection with six paragraphs.

12

The Debtor

From the outset, the Debtor notes the existence of over twenty "Disputed Issues of Fact"
identified in the Joint Pre-Trial Statement which he contends preclude summary judgment.[45]   The
Debtor argues that he properly listed Richards in his schedules, and therefore, her claim was
discharged.  Alternatively, the Debtor contends that Richards' lien is a judicial lien because it arose
pursuant to the Judgment.[46]   Moreover, he asserts that Richards breached the Agreement by failing
to convey title to the Sagamore Property to him and obtain a discharge of the Despositors' lien, thus
entitling him to a discharge of the Mortgage or set off of an amount to be determined by the Court.

## IV. DISCUSSION

### A. The Summary Judgment Standard

Summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials
on file, and any affidavits show that there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law."[47]   "A 'genuine' issue is one supported by such
evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the
nonmoving party."[48]   Material facts are those having the potential to affect the outcome of the suit

---

[45] For the reasons stated above, I reject this argument.

[46] As stated above, the Debtor also argues erroneously that the removal of the Depositors'
lien was a condition precedent to the granting of the Mortgage.

[47]  Fed. R. Civ. P. 56(c) made applicable in adversary proceedings by Fed. R. Bankr. P.
7056.

[48] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d. 1, 2 (1st Cir. 1999)(*quoting
Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).

under the applicable law.[49]

The party seeking summary judgment bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits, if any,' which demonstrate the absence of a genuine issue of material fact."[50]   The nonmoving party must then "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'"[51]   A trialworthy issue cannot be established by "conclusory allegations, improbable inferences, and unsupported speculation."[52]   The Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[53]

B. Effect of the Debtor's Discharge

From the outset it is important to recognize that secured claims have two components: the debtor's *in personam* liability on the obligation secured by the lien and the creditor's *in rem* rights to proceed against the collateral.[54]   While this distinction may typically be of no practical consequence, particularly where the debtor wishes to retain the collateral, it is important in bankruptcy cases because a Chapter 7 "discharge extinguishes *only* 'the personal liability of the

---

[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d at 703.

[50] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[51] *Triangle Trading Co.*, 200 F.3d at 2 (*quoting Morris v. Gov't Dev't Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).

[52] *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990)(*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[53] *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

[54] *See Johnson v. Home State Bank*, 501 U.S. 78, 81 (1991)

14

debtor . . . . the Code provides that a creditor's right to foreclose on a mortgage survives or passes through the bankruptcy."[55]  Indeed, the Supreme Court of the United States has expressly stated that "[o]rdinarily, liens and other secured interests survive bankruptcy."[56]  Accordingly, even if the Debtor's *in personam* liability was discharged, Richards' ability to enforce the Mortgage *in rem* would have been unaffected by the Debtor's discharge.

The question of whether the Debtor's *in personam* liability for the underlying obligation survived the Debtor's bankruptcy is a more difficult question.  Richards contends that it did, or otherwise should have, for several reasons.  She asserts that the Debtor is not entitled to a discharge under 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(6).  Section 727(a), however, relates only to denial of discharge and not revocation of one that has already entered.[57]  Here, the deadline by which to file complaints objecting to the Debtor's discharge expired and the discharge entered.[58]  Accordingly, Richards' request for denial of the Debtor's discharge under 11 U.S.C. § 727(a) is untimely.[59]

The prior entry of the Debtor's discharge also affects Richards' theories under 11 U.S.C. §§

---

[55] *Id.* at 82-83 (1991) (*quoting* 11 U.S.C. § 524(a)(1)) (emphasis in original).

[56] *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991).

[57] *Cf.* 11 U.S.C. § 727(a) with 11 U.S.C. § 727(d).

[58] *See* Fed. R. Bankr. P. 4004(a) (complaints objecting to a debtor's discharge under 11 U.S.C. § 727(a) must be filed no later than 60 days after the first date set for the meeting of creditors), (b) (deadline may only be extended on a motion by a party in interest filed prior to the expiration of the deadline); *see also* Fed. R. Bankr. P. 9006(b)(3) (the court may enlarge the time for taking action under Rule 4004 only to the extent and under the conditions provided in the rule).

[59] I note that Richards did not request revocation of the Debtor's discharge pursuant to 11 U.S.C. § 727(d).

15

523(a)(2), (a)(4), (a)(6), and (a)(15).  Section 523(c)(1) states that:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be
> discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of
> subsection (a) of this section, unless, *on request of the creditor to whom such debt
> is owed*, and after notice and a hearing, the court determines such debt to be excepted
> from discharge under paragraph (2), (4), (6), or (15), as the case may be, of
> subsection (a) of this section.[60]

Similarly, the deadline by which to bring such a request expired long ago.[61]  Nonetheless, it is

possible that Richards' claims for exception to discharge may find new life under 11 U.S.C. §

523(a)(3).  That section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title
> does not discharge an individual debtor from any debt—
>
> * * *
>
> > (3) neither listed nor scheduled under section 521[a](1)[62] of this title,
> > with the name, if known to the debtor, of the creditor to whom such
> > debt is owed, in time to permit—
> >
> > > (A) if such debt is not of a kind specified in paragraph
> > > (2), (4), or (6) of this subsection, timely filing of a
> > > proof of claim, unless such creditor had notice or
> > > actual knowledge of the case in time for such timely
> > > filing; or
> > > (B) if such debt is of a kind specified in paragraph (2),
> > > (4), or (6) of this subsection, timely filing of a proof
> > > of claim and timely request for a determination of
> > > dischargeability of such debt under one of such

---

[60] 11 U.S.C. § 523(c)(1) (emphasis added).

[61] *See* Fed. R. Bankr. P. 4007(c) (complaints to determine the dischargeability of a debt
under 11 U.S.C. § 523(c) to be filed within the same 60 day period following the first date set for
the meeting of creditors); *see also* Fed. R. Bankr. P. 9006(b)(3) (Rule 4007 deadline may only be
extended as provided by the rule).

[62] The statute erroneously cites 11 U.S.C. § 521(1) without reference to an alphabetical
subsection.

16

> paragraphs, unless such creditor had notice or actual
> knowledge of the case in time for such timely filing
> and request;[63]

Conspicuously absent from 11 U.S.C. § 523(a)(3)(B) is a parallel reference to (a)(15), which is present in the above quoted 11 U.S.C. § 523(c)(1).  Nearly every commentator has concluded that this omission is a technical error and that 11 U.S.C. § 523(a)(3)(B) should be read to include (a)(15).[64]  At least two courts relying on *Lamie v. United States Trustee*[65] have ruled otherwise, concluding that in accordance with the general rules of statutory construction, not inserting (a)(15) into 11 U.S.C. § 523(a)(3)(B) does not render an absurd result.[66]  I respectfully disagree with those courts because, read literally, 11 U.S.C. § 523(a)(3)(B) would allow a debtor to discharge divorce related debts other than support in a no asset case by simply not listing the claim until after the deadline by which complaints objecting to the dischargeability of certain debts had expired.[67]  Such a result runs contrary to the Constitutional directive for due process "which is . . . reasonably

---

[63] 11 U.S.C. § 523(a)(3).

[64] *See Needs v. Buxton (In re Buxton)*, No. 06-6013, 2006 WL 3253163 *4 (Bankr. N.D. Ohio Nov. 8, 2006); *Merritt v. Dunston (In re Merritt)*, No. 99-81948C-7D, 2001 WL 1699697 *4 n.1 (Bankr. M.D.N.C. Aug. 30, 2001); *Steele v. Assey (In re Steele)*, No. 00-00729-W, 2001 WL 1804310 *3 (Bankr. D.S.C. Feb. 15, 2001); *Jestice v. Jestice (In re Jestice)*, No. 00-1041, 2000 WL 1805312 *7 n. 14 (Bankr. E.D. Va. Oct. 16, 2000); *Herman v. Bateman (In re Bateman)*, 254 B.R. 866, 870 n. 5 (Bankr. D. Md. 2000).  *See also* 4 *Collier on Bankruptcy*, ¶ 523.09[1] (15th ed. Rev. 2009); Claude R. Bowles et al., *What the Bankruptcy Code Giveth, Congress Taken Away: The Dischargeability of Domestic Obligations after the Bankruptcy Reform Act of 1994*, 34 U. Louisville J.Fam.L. 521, 603-04 (1994).

[65] *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004).

[66] *Dixon v. Dixon (In re Dixon)*, 280 B.R. 755, 759 n.7 (Bankr. M.D. Ga. 2002); *Robuck v. Robuck (In re Robuck)*, No. 07-00028, 2007 WL 3024026 *5-6 (Bankr. D. Mont. Oct. 12, 2007).

[67] *See In re Jestice*, 2000 WL 1805312 at *7 n. 14.

17

calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[68]   As such, I will read 11 U.S.C. § 523(a)(3)(B) to include (a)(15).

For 11 U.S.C. § 523(a)(3)(B) to apply in the present case, Richards must demonstrate: (1) that her claim was neither listed nor scheduled under 11 U.S.C. § 521; (2) that she did not receive notice or actually have knowledge of the Debtor's bankruptcy filing in time to file a complaint under 11 U.S.C. § 523(a); and (3) that her claim is for a debt of a kind specified in 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6), or (a)(15), meaning she must prove the elements of any of those subsections.   In this way, a dischargeability proceeding under 11 U.S.C. § 523(a)(3)(B) differs from those under 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6), or (a)(15) only by adding elements regarding the scheduling of the debt and notice or actual knowledge.[69]

"In order for a debt to be duly listed, the debtor must state the name and address of the creditor."[70]   "[A]lthough the words are not specifically included in the statute, . . . when the statute talks about the listing or scheduling of the creditor it requires the proper deliverable address where the creditor is destined to receive appropriate notice. . . .   If nothing else, due process, at the most basic level, requires that the debtor furnish an appropriate address for the creditor if the debtor knows it."[71]   Although the parties each devoted considerable discussion to the validity of the PO Box as

---

[68] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

[69] *Hiershe v. Brassard (In re Brassard)*, 162 B.R. 375, 381 (Bankr. D. Me. 1994)

[70] *Lubeck v. Littlefields's Restaurant Corp. (In re Fauchier)*, 71 B.R. 212, 215 (B.A.P. 9th Cir. 1987) (*citing* Fed. R. Bankr. P. 1007).

[71] *Beverly Lumber Co. v. Nicholson (In re Nicholson)*, 170 B.R. 153, 155 (Bankr. W.D. Mo. 1994).

Richards' mailing address, it is a red herring.[72]  Regardless of whether she continued to use it as a

mailing address, no mailing address appeared with her name on the Matrix.  This means she did not

receive the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (the "Notice")

at any address because the Court could not send one without a mailing address.  Accordingly, I find

that Richards' claim was not properly listed.

Because the Debtor failed to properly list Richards on the Matrix, she would not have

received the Notice at all, let alone in time to file a complaint objecting to the dischargeability of her

claim.  The question then becomes whether Richards had actual knowledge of the Debtor's

bankruptcy.  In her affidavit, she states that she was unaware of the Debtor's filing until the summer

of 2003, when he commenced the Probate Court action against her.[73]  The Debtor does not dispute

this assertion in his affidavit.  Therefore, I find that Richards did not have notice or actual knowledge

of the bankruptcy in time to file a complaint objecting to the dischargeability of her claim.

As the final part of my dischargeability analysis, I must consider the merits of Richards'

theories under 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6), and (a)(15).  In present case, the debt in

question arose as part of a settlement agreement incorporated into a divorce judgment.  With that in

mind, 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6) are clearly inapplicable, despite Richards' general

allegations of fraud in failing to list her debt, as the debt did not arise from fraud, false pretenses,

materially false statements, defalcation while acting in a fiduciary capacity, embezzlement, larceny,

---

[72] I note, however, that debtors must use reasonable diligence in completing their
schedules and may not simply rely on their own knowledge of the creditor's address.  *In re
Fauchier*, 71 B.R. at 215.

[73] Docket No. 41 at ¶¶ 9, 11, 16.

19

or a willful and malicious injury by the debtor.[74]  Section 523(a)(15), however, conditionally excepts

---

[74] (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

    (B) use of a statement in writing—

        (i) that is materially false;

        (ii) respecting the debtor's or an insider's financial condition;

        (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

        (iv) that the debtor caused to be made or published with intent to deceive; or

    (C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,075 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,075 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act;

\* \* \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

\* \* \*

from discharge debts "[other than a domestic support obligation] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . . ."[75]

Without question, Richards' claim arises out of a separation agreement, but I must still determine whether the claim is in the nature of support or a property settlement. "It is well established that a state probate court's characterization of a debt is not determinative,"[76] and traditionally, I have utilized a seven factor test to determine the true characterization of a debt arising from a separation agreement.[77]   In the present case, I find that Richards' claim is in the nature of a property settlement and not support based upon several of those factors. First, the debt in question is due in a lump sum rather than in installments, suggesting that it is in the nature of a property settlement and not support. Second, the debt becomes payable only after Richards first obtains a discharge of a lien of almost equivalent value. Such ordered and contingent performance indicates a division of property. Third, the receipt of a lump sum payment only after having obtained a

_____

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6).

[75] 11 U.S.C. § 523(a)(15).

[76] *Ghelfi v. Abati (In re Ghelfi)*, No. 98-1135, 1999 WL 9940 *1 (Bankr. D. Mass. Jan. 6, 1999). *See also Wolfe v. McCartin (In re McCartin)*, 204 B.R. 647 (Bankr. D. Mass. 1996); *Peterson v. Fagan (In re Fagan)*, 144 B.R. 204 (Bankr. D. Mass. 1992).

[77] *In re Ghelfi*, 1999 WL 9940 at *2. These factors include: 1) whether the payment is a lump sum or in installments; 2) whether the obligation ends upon certain events; 3) the length of the marriage; 4) whether children were involved; 5) the earning power of the parties; 6) whether the support would be inadequate without the obligation; and 7) whether the obligation was in lieu of greater alimony allowance.

discharge of a lien of greater value would render the payment inadequate as support.  Fourth, the

parties waived all present and future claims to alimony in the Agreement.  Accordingly, I find that

Richards' claim arising from the Agreement is in the nature of a property settlement and is a debt

of the kind specified in 11 U.S.C. § 523(a)(15).

Prior to the enactment of BAPCPA, debts under 11 U.S.C. § 523(a)(15) were not

automatically excepted from discharge and required the court to consider the debtor's ability to pay

and weigh the benefit of discharging the debt to the debtor against the detriment to the former spouse

of the debtor.[78]  While courts disagree as to which party bears the burden of proof under 11 U.S.C.

§ 523(a)(15), the majority hold that the once the creditor proves that the debt is of a kind specified

in 11 U.S.C. § 523(a)(15), the burden shifts to the debtor to prove his inability to pay or that the

benefit of a discharge does not outweigh the detriment to the creditor spouse.[79]  In *In re McCartin*,

---

[78] Section 523(a)(15) provides in relevant part that a discharge under title 11 does not
discharge debt incurred by the debtor in connection with a separation agreement or divorce
decree that is not in the nature of a support obligation unless:

> (A) the debtor does not have the ability to pay such debt from income or property
> of the debtor not reasonably necessary to be expended for the maintenance or
> support of the debtor or a dependent of the debtor and, if the debtor is engaged in
> a business, for the payment of expenditures necessary for the continuation,
> preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs
> the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 U.S.C. §§ 523(a)(15)(A), (B).

[79] *See, e.g., Shellem v. Koons (In re Koons)*, 206 B.R. 768, 772 (Bankr. E.D. Pa. 1997);
*Wynn v. Wynn (In re Wynn)*, 205 B.R. 97, 101 (Bankr. N.D. Ohio 1997); *In re McCartin*, 204
B.R. at 653; *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324 (Bankr. N.D. Ohio
1996); *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 302 (Bankr. E.D. Ark. 1996); *Schmitt
v. Eubanks (In re Schmitt)*, 197 B.R. 312, 315 (Bankr. W.D. Ark. 1996); *Samayoa v. Jodoin (In
re Jodoin)*, 196 B.R. 845, 853 (Bankr. E.D. Cal. 1996); *Collins v. Florez (In re Florez)*, 191 B.R.
112, 115 (Bankr. N.D. Ill. 1995); *Becker v. Becker (In re Becker)*, 185 B.R. 567, 569 (Bankr.
W.D. Mo. 1995); *Hill v. Hill (In re Hill)*, 184 B.R. 750, 754 (Bankr. N.D. Ill. 1995); *but see*

Judge Feeney of this district adopted the majority position, explaining that the use of the word

"unless" in 11 U.S.C. § 523(a)(15) is analogous to that in 11 U.S.C. § 523(a)(8),[80] where a debtor

seeking an undue hardship discharge of student loans bears the burden of proof.[81]   I am persuaded

by this reasoning and conclude that in a dischargeability proceeding under 11 U.S.C. § 523(a)(15),

the Debtor bears the burden of proving that he lacks the ability to pay such debt or that its discharge

would not result in a benefit to him that is outweighed by the detriment to his former spouse.

In the present case, Richards sustained her initial burden in the Motion for Summary

Judgment by showing that her claim is of a kind specified in 11 U.S.C. § 523(a)(15).  The Debtor,

however, did not plead an affirmative defense under this section nor did he submitt any evidence in

support of one.  As the party opposing summary judgment, that was his burden under Fed. R. Civ.

P. 56(e).  Therefore, in the absence of evidence to the contrary, I find no cause why the debt should

not be discharged.

Having satisfied all elements under 11 U.S.C. §§ 523(a)(3)(B) and (a)(15), I find that the *in*

*personam* portion of Richards' claim was neither discharged nor is dischargeable.  As will be

---

*Garrity v. Hadley (In re Hadley)*, 239 B.R. 433 (Bankr. D.N.H. 1999); *Taylor v. Taylor*, 199 B.R.
37, 40 (N.D. Ill. 1996); *Marquis v. Marquis (In re Marquis)*, 203 B.R. 844, 847 (Bankr. D. Me.
1997); *Greenwalt v. Greenwalt (In re Greenwalt)*, 200 B.R. 909, 913 (Bankr. W.D. Wash. 1996);
*Dressler v. Dressler (In re Dressler)*, 194 B.R. 290, 304 (Bankr. D.R.I. 1996); *Woodworth v.
Woodworth (In re Woodworth)*, 187 B.R. 174, 177 (Bankr. N.D. Ohio 1995); *Kessler v. Butler
(In re Butler)*, 186 B.R. 371, 374 (Bankr. D. Vt. 1995).

[80] In relevant part, 11 U.S.C. § 523(a)(8) provides that "[a] discharge under . . . this title
does not discharge an individual debtor from any debt . . . *unless* excepting such debt from
discharge under this paragraph would impose an undue hardship on the debtor and the debtor's
dependents, for-- [an educational loan] . . . ."  11 U.S.C. § 523(a)(8) (emphasis added).

[81] *In re McCartin*, 204 B.R. at 654.

discussed below in section IV.D, however, I make no determination as to the validity or extent of

that obligation.  Therefore, I will grant summary judgment in favor of Richards on Count I of the

Complaint and the dischargeability portion of the Counterclaim.

C. Lien Avoidance under Section 522(f)

Pursuant to 11 U.S.C. § 522(f)(1), "the debtor may avoid the fixing of a lien on an interest

of the debtor in property to the extent that such lien impairs an exemption to which the debtor would

have been entitled under subsection (b) of this section, if such lien is . . . a judicial lien . . . ."[82]

Generally speaking, a lien is a "charge against or an interest in property to secure the payment of a

debt or secure performance of an obligation."[83]  "The Bankruptcy Code recognizes three types of

liens: statutory liens, judicial liens, and security interests."[84]  A judicial lien is defined as a "lien

obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."[85]  In

contrast, a security interest, or consensual lien, is a "lien created by an agreement."[86]  "*A lien is*

*classified based upon the method by which the lien is created*, 'regardless of the method used or

means employed to make [the lien] enforceable either between the parties or against the world.'"[87]

Here, the lien, namely, the Mortgage, was created when the Debtor granted it to Richards.

---

[82] 11 U.S.C. § 522(f).

[83] 11 U.S.C. § 101(37).

[84] *In re Levenson*, No. 06-13399-WCH, 2008 WL 821844 *5 (Bankr. D. Mass. Mar. 25, 2008) (*citing Naqvi v. Fisher*, 192 B.R. 591, 595 (D.N.H. 1995)).

[85] 11 U.S.C. § 101(36).

[86] 11 U.S.C. § 101(51).

[87] *Naqvi*, 192 B.R. at 596 (*quoting Wicks v. Wicks*, 26 B.R. 769, 771 (Bankr. D. Minn. 1982)) (emphasis added).

24

Although the Debtor's obligation to do so arose under the Agreement, which was later incorporated into the Judgment, neither of these facts alter the underlying consensual nature of the transaction. The Debtor first agreed to grant Richards the Mortgage when executed the Agreement. He then ratified that agreement by not appealing the Judgment which incorporated the Agreement. Finally, the Debtor manifested his consent one last time by actually granting the Mortgage to Richards. Accordingly, I find that the Mortgage is a security interest that is not avoidable under 11 U.S.C. § 522(f) and will grant Richards summary judgment on Count II of the Complaint.

D. Breach of Contract and Unjust Enrichment

The Debtor contends that the Richards breached the Agreement by failing to remove the Depositors' lien from the Sagamore Property, entitling him to some form of relief.[88] The Agreement provides that "[u]pon [Richards'] . . . discharge of [the $60,000 Depositors' lien], within 60 days thereof, [the Debtor] shall pay to [Richards] . . . the sum of $45,000," the amount secured by the Mortgage and at issue.[89] It is undisputed that the Debtor and not Richards removed the Depositors' lien from the Sagamore Property. This appears to be an event neither addressed nor anticipated in the Agreement. A literal reading of the Agreement suggests that the obligation simply will not become payable because the contingency, namely, Richards' removal of the Depositors' lien, will never occur. That, however, leaves the Mortgage securing the obligation in limbo. Recognizing that the Agreement is in the nature of a property settlement in a divorce proceeding, I am also mindful that the non-occurrence of certain contingencies and the resulting effect on the parties' obligations

---

[88] The Debtor also argues that Richards breached the Agreement earlier by failing to transfer her interest in the Sagamore Property. This breach, however, was previously remedied by the Probate Court's order divesting Richards of her interest.

[89] Docket No. 38, Ex. 1 at ¶ 6 (struck language omitted).

might require adjustments to other obligations under Agreement.

I may, in my discretion, abstain from exercising jurisdiction over a proceeding arising in a

bankruptcy case "in the interest of justice, or in the interest of comity with State courts or respect for

State law."[90]   To determine whether discretionary abstention is appropriate, courts consider the

following factors:

> (1) the effect of abstention on the efficient administration of the bankruptcy estate;
> (2) the extent to which state law issues predominate over bankruptcy issues;
> (3) the difficulty or unsettled nature of the applicable law;
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
> (5) the basis of bankruptcy jurisdiction (if any) other than 28 U.S.C. § 1334;
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (7) the substance rather than the form of an asserted "core" proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of the bankruptcy court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to jury trial; and
> (12) the presence in the proceeding of non-debtor parties.[91]

Consideration of these factors weigh heavily in favor of abstention.  First, the bankruptcy

estate has been fully administered and but for the present adversary proceeding, the case would have

remained closed.  Now that have I determined that the Debtor's discharge did not effect either the

Mortgage or the underlying obligation and concluded that the Mortgage is not avoidable under 11

U.S.C. § 522(f), the only remaining issues before me relate to the enforcement of the Agreement.

Second, "[d]ivorce and attendant issues of . . . division of marital property are the province of state

---

[90] 28 U.S.C. § 1334(c)(1).

[91] *Cox v. Cox (In re Cox)*, 247 B.R. 556, 569-570 (Bankr. D. Mass. 2000) (*citing Hatcher v. Lloyd's of London*, 204 B.R. 227, 234 (M.D. Ala. 1997)).

courts, implicating concerns for comity."[92]  Third, as previously stated, the Agreement is ambiguous

as to the rights and obligations of the parties under the present circumstances.  An amendment or

modification of the Agreement, and therefore the Judgment, is implicit in such a determination and

not within my jurisdiction.[93]  Fourth, the Debtor has already commenced an action in the Probate

Court to resolve these issues.  As the parties now have the relief that the Probate Court directed them

to obtain, namely, a determination of the effect of the Debtor's discharge, there is no longer any

impediment to the continuation of that proceeding.  Fifth, the outcome of the remaining disputes

between the two parties does not implicate bankruptcy law and will have no impact on the Debtor's

estate.  Therefore, I will abstain from deciding Count III of the Complaint in favor of the parties

returning to the appropriate state court forum.

     E.  Rescission of the Transfer and Award of Interest

     In her Counterclaim, Richards requests rescission of the transfer of her interest in the

Sagamore Property to the Debtor and an award of interest on the underlying obligation.  Presumably,

her justification is that the Debtor breached the Agreement by failing to pay her $45,000.  Unlike the

Debtor's breach of contract claim, which is in effect a request to determine the rights of the parties

under the Agreement, this portion of Richards' Counterclaim is an explicit request for a modification

of the Judgment and Probate Court order divesting her of her interest in the Sagamore Property.

Under the *Rooker-Feldman* doctrine, I am barred from such action.[94]  "Federal courts are precluded

---

[92] *Agin v. Kirby (In re Kirby)*, 403 B.R. 169, 172 (Bankr. D. Mass. 2009).

[93] *Id.*

[94] The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, the Supreme Court of the United States held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of

'from exercising subject matter jurisdiction where the issues presented in the case are 'inextricably

intertwined' with questions previously adjudicated by a state court, such that the federal district court

would be in the unseemly position of reviewing a state court decision for error.'"[95] As such, I will

dismiss this portion of the Counterclaim for lack of jurisdiction.

F. Attorney's Fees

"Under the well-established 'American Rule,' attorney's fees are not recoverable by a party

unless statutorily or contractually authorized."[96]  A court may, however, award attorney's fees when

the non-prevailing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[97]

Vexatious conduct requires that "the losing party's actions were 'frivolous, unreasonable, or without

foundation, even though not brought in subjective bad faith.'"[98]  A weak or legally inadequate case

is insufficient to trigger the bad faith exception to the "American Rule."[99]  This exception must be

"used sparingly and reserved for egregious circumstances."[100]

In the present case, Richards offered no explanation why the "American Rule" should not

---

federal district courts. 263 U.S. at 415-16. In *Feldman*, the Supreme Court held that this
jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a
state court has already decided. 460 U.S. at 486-87.

[95] *Heghmann v. Indorff (In re Heghmann)*, 316 B.R. 395, 403 (B.A.P. 1st Cir. 2004)
(*quoting Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42, 44 (1st Cir.2003)).

[96] *Mullane v. Chambers*, 333 F.3d 322, 337 (1st Cir. 2003).

[97] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).

[98] *Local 285, Serv. Employee Int'l Union, AFL-CIO  v. Nonotuck Resource Assocs., Inc.*,
64 F.3d 735, 737 (1st Cir. 1995) (*quoting Washington Hosp. Ctr. v. Serv. Employees Int'l Union
Local 722, AFL-CIO*, 746 F.2d 1503, 1510 (D.C. Cir. 1984)).

[99] *Americana Indus., Inc. v. Wometco de Puerto, Inc.*, 556 F.2d 625 (1st Cir. 1977).

[100] *Mullane*, 333 F.3d at 338.

apply.  While the Debtor did not ultimately prevail on his Complaint, I do not find that it was so frivolous and unreasonable to constitute wanton, vexatious, or oppressive conduct.  As such, I will deny Richards summary judgment on this portion of the Counterclaim.

## V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order granting the Motion to Strike with respect to paragraph eight of the Debtor's affidavit and denying the remainder of the motion, granting the Motion for Summary Judgment on Counts I and II of the Complaint and the dischargeability portion of the Counterclaim, abstain from deciding Count III of the Complaint, dismiss the rescission and interest portion of the Counterclaim for lack of jurisdiction, and deny summary judgment as to the attorney's fees portion of the Counterclaim.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: December 10, 2009                              .